UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.

JOSUE GARRIGA III
    a/k/a "Sway"

CRIMINAL COMPLAINT

Case No. 3:24-mj-1129-PDB

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about March 6, 2024, in the Middle District of Florida, and elsewhere, the defendant,

> using a facility and means of interstate commerce, that is, by cellular telephone and by computer via the internet, did knowingly persuade, induce, entice, and coerce an individual who had not attained the age of 18 years, that is, a female child referred to as MV1, to engage in sexual activity for which any person could be charged with a criminal offense, specifically, unlawful sexual activity with a minor, in violation of Florida Statute 794.05(1),

in violation of Title 18, United States Code, Section 2422(b). I further state that I am a Special Agent of Homeland Security Investigations, and that this Complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

_____
BENJAMIN J. LUEDKE, Complainant

Sworn and subscribed to before me on this 12th day of April, 2024 at Jacksonville, Florida,

_____
PATRICIA D. BARKSDALE
United States Magistrate Judge

## AFFIDAVIT

I, Benjamin J. Luedke, being duly sworn, hereby state as follows:

## I.     INTRODUCTION

### Identity of Affiant

1.      I am a Special Agent (SA) with Homeland Security Investigations (HSI), the investigative arm of Immigration and Customs Enforcement (ICE), formerly known as the United States Customs Service. I have been assigned to the Office of the Assistant Special Agent in Charge, Jacksonville, Florida since August 2007. Prior to that, I was assigned to the Blaine, Washington office, beginning in July of 2002. I am a law enforcement officer of the United States and am thus authorized by law to engage in or supervise the prevention, detection, investigation or prosecution of violations of federal criminal law. I am responsible for enforcing federal criminal statutes under the jurisdiction of HSI, including violations of law involving the exploitation of children. I have attended the Basic Criminal Investigator School and the United States Immigration and Customs Enforcement Academy at the Federal Law Enforcement Training Center in Brunswick, Georgia. In my capacity as a Special Agent, I have participated in numerous types of investigations during which I have conducted or participated in physical surveillance, undercover transactions and operations, historical investigations, extradition cases and other complex investigations. Prior to my employment with HSI, I worked as a federal police officer with the U.S. Capitol Police from June 2000 to March 2002. Since becoming a Special Agent, I have worked

with experienced Special Agents and state and local law enforcement officers who also investigate child exploitation offenses.

2.   I have investigated and assisted in the investigation of criminal matters involving the sexual exploitation of children that constituted violations of 18 U.S.C. §§ 2251, 2252, 2252A, 2422, and 2423, as well as Florida state statutes that criminalize sexual activity with minors and other methods of child sexual exploitation. In connection with such investigations, I have served as case agent and have served as an undercover agent in online child exploitation cases. During the course of my investigations, I have worked closely with members of the local child exploitation task force comprised of agents and officers from HSI, the Federal Bureau of Investigation (FBI), the Florida Department of Law Enforcement (FDLE), the Jacksonville Sheriff's Office (JSO), the St. Johns County Sheriff's Office (SJSO), the Clay County Sheriff's Office (CCSO), and the Putnam County Sheriff's Office, among other agencies. These agencies routinely share information involving the characteristics of child sex offenders as well as investigative techniques and leads. As a federal agent, I am authorized to investigate and assist in the prosecution of violations of laws of the United States, and to execute search warrants and arrest warrants issued by federal and state courts.

3.   In the course of my duties as a special agent for HSI, I have been investigating unlawful sexual contact between Josue GARRIGA III, who goes by the nickname "Sway," and a minor child. This affidavit is based upon information provided to me both verbally and in written documentation from other law

2

enforcement officers and personnel, to include CCSO Det. Ryan Ellis, CCSO Det. Heather Lanier, and CCSO Det. Anthony Pena, as well as through an investigation that I personally conducted as set forth herein.

### Requested Complaint

4. This affidavit is being submitted for the limited purpose of establishing probable cause to issue a criminal complaint charging GARRIGA III with a violation of 18 U.S.C. § 2422(b), that is, the use of a facility or means of interstate or foreign commerce to persuade, induce, entice, and coerce any individual who has not attained the age of 18 years, to engage in any sexual activity for which any person can be charged with a criminal offense, and attempt to do so. Because this affidavit is submitted for this limited purpose, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to issue the requested criminal complaint.

### Statutory Authority

5. This investigation concerns alleged violations of, among other statutes, 18 U.S.C. § 2422(b). Based upon my training and experience, I know that this statute makes it a crime for a person, using any facility or means of interstate or foreign commerce, to knowingly persuade, induce, entice, or coerce any individual who has not attained the age of 18 years, to engage in any sexual activity for which any person can be charged with a criminal offense, or to attempt to do the same. Additionally, I know that Florida Statute 794.05(1) provides that it is a second-degree felony for a person 24 years of age or older to engage in sexual activity with a person 16 or 17 years

3

of age. Sexual activity is defined for purposes of Florida Statute 794.05(1) to include oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object.

## II.     PROBABLE CAUSE

6.     During March 2024, I learned of an ongoing investigation of Josue GARRIGA III for violations of Florida statutes related to the online solicitation of a child, transmission of harmful material to a child, and unlawful use of a two-way communication device, among other things. GARRIGA III was an officer with the Jacksonville Sheriff's Office (JSO) at the time of the initial allegations.

7.     According to police reports and other materials that I reviewed, on March 27, 2024, GARRIGA III was arrested by detectives from CCSO and charged with violating Florida state statutes that prohibit Unlawful Sexual Activity with a Minor, Lewd and Lascivious Touching of a Minor, Transmission of Harmful Material to a Minor, Travel to Meet a Minor for Sex, and Unlawful Use of a Two-Way Communication Device.

8.     During the days following GARRIGA III's arrest, I communicated with Det. Ellis, Det. Lanier, and Det. Pena regarding the facts of the investigation and subsequently received and reviewed information and documentation, to include several state search warrant affidavits and an arrest warrant affidavit. I also received reports documenting witness interviews and investigative steps; recorded interviews of GARRIGA III, the minor victim (MV1), and the minor victim's mother (Parent 1), among others; and copies of materials obtained from electronic devices that belong to

MV1 and have been consensually searched. The following paragraphs summarize what I have learned based on my communications with Det. Ellis, Det. Lanier, and Det. Pena, and my review of the information provided.

9. During the timeframe of the offenses described herein, MV1 was a child aged 17 years old. MV1 has subsequently turned 18 years old.

10. On March 8, 2024, CCSO Det. Lanier and CCSO Sergeant (Sgt.) Senters responded to an address in Fleming Island, FL. Upon arrival, Det. Lanier and Sgt. Senters contacted the reporting party, Parent 1. The following is a summary of information provided by Parent 1 in a report authored by Det. Lanier:

> Parent 1 advised that on March 7, 2024, she discovered communication between her child, herein referred to as minor victim one (MV1), and "Sway," later identified during this investigation as Josue GARRIGA III. Parent 1 advised she proceeded to look through MV1's phone and discovered messages between MV1 and GARRIGA III on various social media and messaging apps as well as photos she felt were not appropriate. Parent 1 advised that after discovering the messages, she contacted [Witness 1], a family friend who pastors the church MV1 attends and asked him if he recognized the name "Sway" to which [Witness 1] reminded Parent 1 about a conversation he had with her back in September or October 2023 about GARRIGA III. Parent 1 recalled [Witness 1] contacting her and telling her that MV1 was seen being very flirtatious with GARRIGA III during a church service. Parent 1 advised GARRIGA III was an officer with the Jacksonville Sheriff's Office (JSO). Prior to contacting the CCSO, Parent 1 took photos of messages between GARRIGA III and MV1 from MV1's phone. Parent 1 subsequently provided those photos to Det. Lanier. Parent 1 turned over MV1's Apple iPhone XR, Apple iPhone 7, and Apple iPod and provided written consent to search the devices.

11. On March 11, 2024, CCSO Computer Forensic Analyst (CFA) Det. Pena began processing MV1's electronic devices. Det. Pena subsequently discovered numerous deleted WhatsApp messages between February 27, 2024, and March 8, 2024,

5

from GARRIGA III, contact name "sway," to MV1 on MV1's Apple iPhone XR. Although the messages appear to have been deleted, Det. Pena discovered WhatsApp message notifications, which saved the incoming messages. In addition, Det. Pena discovered numerous iMessages (texts) between MV1 and GARRIGA III, also contact name "sway," also between February 27, 2024, and March 8, 2024. Both sets of messages were provided to me on April 5, 2024, and I subsequently reviewed them.

    a.    The following are some of the WhatsApp messages from GARRIGA III to MV1:

<u>February 27, 2024</u>

I miss ur face

I miss getting pics from you too so crappy not seeing you as much as I was so use to seeing you and I def need a hug when we can see each other

I feel like I went from seeing your everyday on ft and seeing just your face body all the time … to just nothing but glad you're back!

You looked amazing on Sunday btw

But it will be good , good to talk again. I know for me I think about you every day

I miss meeting up with you! When can we meet up again

You ok with me sending pics again?

Where my favorite shorts at?

I miss those! Big time lol

I had a dream about you last week

When do you shower ?

What is your hw for today?

I'm going to bed, I'll text you in the am like I use too . You can still send me pics I'll just wake up to them ! So happy again lol

So hot

February 28, 2024

Good morning boo!

You walked to the bus stop yet ?

Your pic stayed in my Brain

Reacted to "i'm at school now"

You free to ft ?

Call me before you change and get settled

You look beautiful btw

What are you up too. ? I'll be able to ft tonight … my work car shit out of me on the side of the road so I gotta borrow a car again

Started Sharing Location

Will I be able to give a shoulder hug ?

February 29, 2024

Good morning, hope you have a better day today. You can't keep getting sad and pushing away. Gotta be able to talk how you feel. Anyways hope to chat with you later and def hope you have a productive day! Sorry if I annoy you, just want to help and see you

Your location doesn't work fyi idk if mine is messed up also

Just making sure babe, I worry about you, my heart hurts for you when I see you hurting and sad. I'm protective of you.

Let me see your beautiful face

You're beautiful

Even though you're wearing a wife beater bra lol

March 1, 2024

Good morning

You ignoring me

Wow lol your mom is gonna be pissed

March 4, 2024

Figured you'd text me when you got home....How was your day?

March 6, 2024

I really wanted to see you lol

Text me on here lol soo easy

Pre stains in my shorts cuz of you

March 7, 2024

Wake up lol I wanna ft you Imy

b. The following are some of the iMessages (texts) between GARRIGA III and MV1:

February 27, 2024

MV1: hey are you at work, i just wanna say something real quick

GARRIGA III: Yeah

MV1: can u call

GARRIGA III: Yeah I'll call

February 28, 2024

GARRIGA III: You busy?

GARRIGA III: Was in the bathroom when you called sorry

MV1: You sent a live location.

GARRIGA III: +19045886321 sent a live location.

8

GARRIGA III: "Will I be able to give a shoulder hug ? "

GARRIGA III: Don't wanna bother you, I know you're still sad

GARRIGA III: Well sorry again goodnight [nickname for MV1]

February 29, 2024

GARRIGA III: Your location doesn't work fyi idk if mine is messed up also

GARRIGA III: +19045886321 sent a live location.

March 4, 2024

MV1: i'm gonna chill w my mom for a lil bit if that's alr

GARRIGA III: Duh of course lol why would it not be alr

March 6, 2024

MV1: https://maps.apple.com/?address=2023%20Park%20Ave,%20Orange%20Park,%20FL%20%2032073,%20United%20States&auid=13266528322839218667&ll=30.165318,-81.700687&lsp=9902&q=The%20Urban%20Bean%20Coffeehouse%20Cafe&t=m [1]

GARRIGA III: Don't forget to text me

MV1: mb i was rushing to get ready

MV1: i'm otw there now

MV1: i won't be able to text while i'm meeting w her

GARRIGA III: Ok text me when you're done

GARRIGA III: So I know to come

MV1: ok

MV1: head now

---

[1] Agent's Note: I conducted open-source research and discovered this location is Urban Bean Coffee House located at 2023 Park Ave, Orange Park, FL 32073.

GARRIGA III: I'm finishing. Up out here

GARRIGA III: How long you going to be up there

MV1: a while

GARRIGA III: Ok good

MV1: when u think you'll get here

GARRIGA III: Hour hopefully

GARRIGA III: Esp with traffic

GARRIGA III: I'll Text you when I leave here

MV1: can you go by a smoke shop and get me a new vape pls. i threw the one i had away

MV1: i'll give you cash if u want

GARRIGA III: I don't need you money

GARRIGA III: Yeah if there is one on 17 I will stop for you

MV1: ❤️

MV1: how long r u gonna be

GARRIGA III: I'm leaving shortly actually

MV1: when 🧍

MV1: https://maps.apple.com/?address=5435%20Roosevelt%20Blvd,%20Jacksonville,%20FL%20%2032210,%20United%20States&auid=10181103372547828466&ll=30.250769,-81.698245&lsp=9902&q=Smoke%20Place%20Smoke%20Shop&t=m [2]

MV1: this one is otw

MV1: the quicker you get here the longer we can talk

---

[2] Agent's Note: I conducted open-source research and discovered this location is a smoke shop.

> MV1: so hurryyyyy
>
> GARRIGA III: Loved "the quicker you get here the longer we can talk"
>
> GARRIGA III: I'm leaving now
>
> GARRIGA III: Btw that smoke shop is on the other side of where I'm not at lol
>
> MV1: isn't that the way you will head to get here
>
> GARRIGA III: "No I'm Going on the highway "
>
> GARRIGA III: I'm not downtown
>
> MV1: https://maps.apple.com/?address=310%20Milwaukee%20Ave,%20Orange%20Park,%20FL%20%2032073,%20United%20States&auid=9908889662538237643&ll=30.162466,-81.701304&lsp=9902&q=L%26T%20Convenience%20Smoke%20Shop&t=m [3]
>
> GARRIGA III: Look at your app
>
> GARRIGA III: I texted you 👀 😬
>
> <u>March 7, 2024</u>
>
> GARRIGA III: You back to not talking to me again

c. Det. Pena also discovered a note on MV1's device titled "Events." The note detailed dates of when MV1 was involved in different types of physical acts of a romantic or sexual nature. "Sway" is notated under the "kiss(boys)-9" and "fingered-7" lists. Based on my training and experience and my review of the evidence in this case, including disclosures made by MV1 (as further described below), I believe that "fingered" refers to the digital penetration of MV1's vagina by GARRIGA III.

12. On March 12 and 26, 2024, Det. Lanier interviewed MV1. Both interviews were recorded, and I have reviewed the recordings, as well as reports authored by Det.

---

[3] Agent's Note: I conducted open-source research and discovered this location is another smoke shop.

11

Lanier summarizing the interviews. MV1 provided the following information, among other things, during the March 12, 2024, interview:[4]

    a.    When asked about GARRIGA III, MV1 advised he was a friend. When asked if she and GARRIGA III were more than just friends, she advised GARRIGA III "hit on her." She advised she was not comfortable with GARRIGA III hitting on her, but he continually did so. She advised GARRIGA III would say stuff about her body.

    b.    When asked if anything happened in person, MV1 became upset and began to cry. She advised she met GARRIGA III at church, and he then found her on Instagram, and began to message her. She advised that GARRIGA III is a police officer in Jacksonville. She advised GARRIGA III wanted her to text on WhatsApp instead of regular text messaging. She advised GARRIGA III hit on her and would be inappropriate. She advised she and GARRIGA III hung out a few times and they just talked but that he would try to escalate things. When asked to explain, she advised he would ask her to sit on him and he put his hands on her breasts and vagina, over her clothes. She advised this happened in his car while parked outside of her house.

    c.    MV1 advised she and GARRIGA III often communicated via Facetime. She advised GARRIGA III would try to make her feel bad or get mad at her if she told him not to touch her. She advised GARRIGA III sent her unsolicited nude images via WhatsApp. She advised she sent him a nude image because he kept asking her and wouldn't leave her alone. She advised GARRIGA III knows she is a minor. MV1 advised GARRIGA III touched her vagina.

    d.    MV1 advised that the first time GARRIGA III touched her was on her thigh while they were at church working together. She advised he started messaging her after that point. She estimated that she initially met GARRIGA III in July/August 2023.

    e.    MV1 advised that GARRIGA III came to see her at Urban Bean coffee shop in Orange Park, FL while she was there to do homework. She advised

---

[4] I learned in my investigation that, prior to this interview, MV1 had been Baker Acted as a result of consuming a quantity of medication that was larger than directed. At the time of the interview, MV1 had been released from the Baker Act. I have reviewed the audio/video recording of the interview and, based on my training and experience and review of the recording, assess that the victim was of sound mind when she provided the interview.

12

               she tried multiple times to get GARRIGA III to leave her alone, but he would not stop texting her. She advised she is afraid GARRIGA III will come after her. She advised that GARRIGA III used his fingers to penetrate her vagina on multiple occasions while they sat in his car outside of her house. She positively identified a picture of GARIGGA III. She advised that GARIGGA III put her hand in his pants to touch his penis. She advised she did not like when GARIGGA III complimented her. She advised that she has a friend who knows about GARRIGA III but not about anything she has done sexually with him.

      f.      MV1 described several tattoos on GARRIGA III's hand, arms, and body and described his penis. She also advised that GARRIGA III is married and has children. She also knows his full first name is Josue. She advised that when GARRIGA III came to her house on 2-3 occasions, he would not park in the driveway or in front of her house but in front of a neighbor's house instead. She advised he would always come over late at night.

      g.      MV1 advised that she and GARRIGA III kissed while they were in his vehicle at Urban Bean coffee shop. She advised he stopped her from trying to get out of his vehicle multiple times.

      h.      MV1 advised that GARRIGA III tried to get her to do "butt stuff" and to touch herself, both while on the phone with him and in person.

13.      MV1 provided the following information, among other things, during the March 26, 2024, interview:

      a.      MV1 advised she sent GARRIGA III clothed pictures as well as nude pictures, one of which she remembers taking in front of a mirror. She advised she thinks she sent GARRIGA III a picture a few days before she met him at the coffee shop on March 6, 2024. She advised GARRIGA III requested pictures of her. She advised that GARRIGA III touched her on multiple occasions to include once at church when he rubbed the outside of her underwear, under her dress, while she was working behind the coffee bar. She advised GARRIGA III took her hand and put it down his pants on multiple occasions.

      b.      MV1 advised GARRIGA III grabbed her hand and put it down his pants when they were in his vehicle at the coffee shop [Urban Bean Coffee House in Orange Park, FL]. She advised she told GARRIGA III she wanted to go back into Urban Bean multiple times and on multiple occasions when she tried to get out, he reached over her and closed the door. She advised GARRIGA III told her he wanted her to "give him head" and when she

13

  said no, he asked her to "kiss it," meaning kiss his penis, and wouldn't let her leave, so she kissed his penis just so she could leave.

c.  MV1 advised that while she and GARRIGA III were in his car outside of her house, he asked her to kiss his penis, and she did. She advised that while on the phone with her and when they were together, GARRIGA III asked her to touch herself so he could watch. She advised GARRIGA III sent her unsolicited nude pictures. She advised GARRIGA III asked her to Facetime with him while she showered. She advised that on one occasion GARRIGA III touched her bare buttocks and proceeded to digitally penetrate her anus. She advised GARRIGA III digitally penetrated her vagina 6-7 times.

14.  On March 27, 2024, Det. Lanier and CCSO Inspector Brown interviewed GARRIGA III. After being advised of his constitutional rights, GARRIGA III acknowledged those rights and agreed to speak with Inspector Brown and Det. Lanier. The interview was audio and video recorded. I have reviewed the recording, as well as a report authored by Det. Lanier summarizing the interview. GARRIGA III provided the following information, among other things, during the interview:

a.  GARRIGA III provided his personal phone number as 904-588-6321[5] and a work phone number of 904-271-5507. He denied having any other phones or communication devices.

b.  When asked if he was familiar with MV1, he responded "Yes, she goes to my church." He advised he has known her as long as he has been at the church which he estimated as less than a year.

c.  When asked how well he knows MV1, he stated, "Pretty well" and advised they started working together while working at the serving portion of her church and became friends from there. He advised he and MV1 also communicated outside of church.

d.  He advised he recently met MV1 at a coffee shop. He advised he and MV1 began talking inside the coffee shop and then both got into his truck.

---

[5] This is the same phone number that shared a live location via iMessage with MV1 on February 27, 2024, as described above.

14

  e. He advised he stopped by MV1's house on occasion. He advised he used his personal phone to communicate with MV1 via text and WhatsApp and that they communicated multiple times a day. He advised he and MV1 would also communicate via FaceTime.

  f. GARRIGA III admitting to having asked MV1 for pictures, but claimed "I would never ask for anything inappropriate." GARRIGA III denied ever receiving inappropriate pictures from MV1. He also denied having any physical contact with MV1 other than a hug. When asked why he and MV1 went out to his truck instead of just staying in the coffee shop, GARRIGA III stated, "Just, just to talk. Like, I don't know." He advised that it was mostly nighttime when he went to MV1's house and she would get into his vehicle. GARRIGA III acknowledged asking MV1 when she showers but advised it was in the wrong context and he was just wondering when she was going to call him.

  g. GARRIGA III admitted to sharing phone location data with MV1.

  h. He advised he also purchased a vape for MV1.

  i. When asked if his wife was aware of their friendship, GARRIGA III hesitated before answering, and then stated, "Umm, I want to say kinda, yeah because, I mean she would see us at church working together."

## III. CONCLUSION

15. Based on the foregoing, I have probable cause to believe that on or about March 6, 2024, Josue GARRIGA III committed a violation of 18 U.S.C. § 2422(b), specifically, that GARRIGA III, using a cellular telephone and using a computer via the internet, knowingly persuaded, induced, enticed, and coerced MV1, who had not attained the age of 18 years, to engage in sexual activity for which any person can be charged with a criminal offense, specifically, unlawful sexual activity with a minor in violation of Florida Statute 794.05(1), and attempted to do the same.

16. Accordingly, I respectfully request a criminal complaint be issued by this Court charging GARRIGA III with this offense.

_____
BENJAMIN J. LUEDKE, Special Agent
Homeland Security Investigations

Sworn and subscribed to before me on this 12th day of April, 2024, at Jacksonville, Florida.

_____
PATRICIA D. BARKSDALE
United States Magistrate Judge